KATHERINE F. WENGER/ CA SB# 223045
BROWN, GEE & WENGER LLP
200 Pringle Avenue, Suite 400
Walnut Creek CA 94596
Telephone: (925) 943-5000
Facsimile: (925) 933-2100
kwenger@bgwcounsel.com

ATTORNEY FOR BEHAVIOR ANALYSTS, INC.,
a California corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEHAVIOR ANALYSTS, INC., a California corporation,<br><br>PLAINTIFF,<br><br>v.<br><br>GRACE CHO; and SEOKHO MYEONG.<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; INTENTIONAL INTERFERENCE WITH CONTRACT; COPYRIGHT INFRINGMENT, AND TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS |

Plaintiff Behavior Analysts, Inc. ("BAI" or "Plaintiff") alleges against Defendant Grace Cho ("Cho"), and Seokho Myeong ("Myeong") (Cho, Myeong, referred to herein collectively as "Defendants") and each of them, as follows:

**GENERAL ALLEGATIONS**

1.      BAI is a California corporation whose principal place of business is in Contra Costa County, California.

2.      BAI is informed and believes and, based thereon, alleges that at all times herein mentioned, Defendant Grace Cho, is an individual whose residence is located in Woodbridge, Virginia.

3.      BAI is informed and believes and, based thereon, alleges that at all times herein mentioned, Defendant Seokho Myeong ("Myeong") is an individual whose residence is in Korea.

1

4.     BAI is an organization with its principal place of business in Walnut Creek, Contra Costa County, California that provides educational services and products to address the needs of children with autism and other language delays.  BAI seeks to provide high-quality, effective interventions for children with disabilities and their parents, as well as provide training to other professionals in the delivery of these services.

5.     From 1992 through 1998 BAI worked to develop a set of publications (including but not limited to a protocol as well as a separate scoring guide) that are often collectively referred to as the ABLLS.  The ABLLS is an assessment tool and curriculum guide, used to help guide the instruction of language and critical learner skills for children with autism or other developmental disabilities.  In 1998 BAI obtained the copyright registration for the publications commonly referred to as the ABLLS Protocol and the ABLLS Scoring Guide from the United States Copyright Office (the "ABLLS Materials").   Over the next two years BAI wrote and then published a revised version of the ABLLS Protocol and ABLLS Scoring Guide  - a publication that is commonly referred to as the ABLLS-R (collectively the "ABLLS-R Materials").  Like the ABLLS Materials, the ABLLS-R Materials consists of  "the Assessment of Basic Language and Learning Skills, ABLLS-R Protocol (the "ABLLS-R Protocol") and the Assessment of Basic Language and Learning Skills - Revised, Scoring Instructions and IEP Guide, Version 3.2 and ("ABLLS-R Scoring Guide").

6.     In 2010, BAI obtained the copyright registrations for the ABLLS-R Materials.  A true and correct copy of the copyright registrations for the ABLLS-R Scoring Guide and ABLLS-R Protocol are attached hereto as Exhibits A-B.

7.     In or around May of 2006, BAI began using the letters "ABLLS-R" in interstate commerce throughout the United States and in foreign commerce in connection with the (i) sale, (ii) offering for sale, (iii) distribution, and (iv) advertisement of its printed instructional, educational and teaching material described above.

8.     On July 9, 2013 BAI obtained a registration for the ABLLS-R trademark from the United States Patent and Trademark office.  Attached hereto as Exhibit C is a true and correct copy of that Trademark registration,

2

9.      On November 2, 2011, BAI entered into an agreement with Defendant Grace Cho for Cho to translate the ABLLS-R into Korean, and to then distribute and sell that Korean translation of the ABLLS-R (the "Licensing Agreement"). A true and correct copy of that agreement is attached hereto as Exhibit D.

10.     BAI is informed and believes that Cho hired Defendant Seokho Myeong to assist her in the translation of the ABLLS-R Materials into Korean, and that Myeong was aware that (1) BAI owned the copyright for the ABLLS-R Material (2) that Cho had an Agreement with BAI to translate the ABLLS-R into Korean and to sell that Korean translation, and that (3) BAI's principal place of business was in Walnut Creek, California.

11.     Throughout 2014, Cho on numerous occasions falsely told BAI that the Korean translation of the ABLLS-R Material was not being sold/available to the public yet.

12.     On or around August 29, 2014, BAI and Cho entered into an agreement confirming the assignment of any of Cho's rights in the Korean translation of the ABLLS-R (the "Assignment Agreement"). A true and correct copy of that Assignment Agreement is attached hereto as Exhibit E. The Licensing Agreement and Assignment Agreement are collectively hereinafter referred to as the "Agreements".

13.     At the end of February of 2015, BAI learned that Cho, without BAI's knowledge, and without paying BAI any royalties as required by the Licensing Agreement, had been selling a Korean version of the ABLLS-R Materials (the "Korean Translation"), and had listed Seokho Myeong as a translator of those publications.

14.     After learning that Cho, without BAI's knowledge, and without paying BAI royalties required, had been selling the Korean Translation, BAI sent correspondence to Cho regarding her numerous violation of the Agreement and requested that if she was selling and distributing Korean Translation that she account for and pay the royalties owed to BAI under the Agreement. Cho never responded to any of BAI's correspondence.

15.     Cho has never paid BAI any royalties as required under the Licensing Agreement. Nor has she provided BAI an accounting of her sales of the ABLLS-R.

16.     BAI is informed and believes that from at least July of 2014 through the present

3

1 | day, Defendants have continued to sell the Korean Translation of the ABLLS-R.

2 | **JURISDICTION**

3 | 17.    This matter involves, among other things, (1) Defendant Cho's breach of her

4 | Licensing Agreement with BAI, and (2) Defendant Myeong's intentional interference with that

5 | agreement, (3) Defendants' infringement of the trademark that BAI holds for the ABLLS-R and

6 | the copyright that BAI holds for the ABLLS-R Protocol and Scoring Guide.  Therefore This

7 | Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338.  In addition, even

8 | absent BAI's federal claims, this Court would also have jurisdiction over this matter pursuant to

9 | 28 U.S.C. §§ 1332.

10 | 18.    The contract at issue here was entered into in Walnut Creek, California and

11 | performance of that contract was to be made in Walnut Creek, California.  In addition, at the

12 | time the acts at issue occurred, Defendants are aware that BAI holds the copyright for the

13 | ABLLS-R Protocol and Scoring Guide, and that BAI's principal place of business is and always

14 | has been in Walnut Creek, California.  Therefore, venue before this Court is proper pursuant to

15 | Federal Rule of Civil Procedure 28 U.S.C. § 1391.

16 | 19.    Furthermore, as part of the Agreement and Assignment Agreement entered into

17 | between Cho and BAI, Cho consented to venue and jurisdiction before this Court.

18 | **FIRST CAUSE OF ACTION**

19 | **(BREACH OF CONTRACT, CHO)**

20 | 20.    BAI incorporates by reference the foregoing paragraphs 1 through 19 as though

21 | fully set forth herein.

22 | 21.    On or around November 2, 2011, BAI and Cho entered into an agreement for Cho

23 | to translate and distribute a Korean version of the ABLLS-R Materials (the "Licensing

24 | Agreement").  A true and correct copy of that agreement is attached hereto as Exhibit D.

25 | 22.    BAI performed all of its material obligations under the Licensing Agreement

26 | and/or its performance of such obligations under the Licensing Agreement was excused.

27 | 23.    Cho breached her obligations under the Licensing  Agreements, by, among other

28 | things, (1) listing Myeong as a translator on the ABLLS-R Materials, (2) failing to complete the

4

1  translation of the ABLLS-R Materials by the required date,  (3) failing to pay BAI the royalties

2  owed under the Agreement, (4) failing to coordinate training workshops as required by the

3  Agreement; (5) failing to provide BAI with an electronic version of the Korean translation of the

4  ABLLS-R Materials as required by that agreement.

5      24.    As a result of defendant's breach of the Agreements, BAI has suffered damages in

6  an amount to be proven at trial.

7      WHEREFORE, BAI prays for judgment as set forth below.

8                              **SECOND CAUSE OF ACTION**

9      **(BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, CHO)**

10     25.    BAI incorporates by reference the foregoing paragraphs 1 through 24 as though

11  fully set forth herein.

12     26.    On or around November 2, 2011, BAI and Cho entered into an agreement for Cho

13  to translate and distribute a Korean version of the ABLLS-R Materials (the "Licensing

14  Agreement").  A true and correct copy of that agreement is attached hereto as Exhibit D.

15     27.    On or around August 29, 2014, BAI and Cho entered into an agreement pursuant

16  to which Cho confirmed her assignment of any and all rights she had in any translation of the

17  ABLLS-R to BAI ("Assignment Agreement").  A true and correct copy of that Assignment

18  Agreement is attached hereto as Exhibit E.

19     28.    BAI did all or substantially all of the significant things that the Agreements

20  required it to do.

21     29.    Cho unfairly interfered with BAI's rights to receive the benefits of the

22  Agreements by (1) failing to inform BAI that she was selling the Korean Translation of the

23  ABLLS-R Materials, (2) falsely telling BAI that the Korean Translation was not being sold/made

24  available to the public when those materials were being sold, (3) failing to provide BAI

25  information regarding the monies being received as a result of the sales of the Korean

26  Translation, and (4) failing to provide BAI an accounting of the monies owed to BAI under the

27  Licensing Agreement.

28     30.    As a result of Cho's breach of the covenant of good faith and fair dealing, BAI

5

1    has suffered damages in an amount to be proven at trial.

2           WHEREFORE, BAI prays for judgment as set forth below.

3                              **THIRD CAUSE OF ACTION**

4              **(INTENTIONAL INTERFERENCE WITH CONTRACT, MYEONG)**

5           31.    BAI incorporates by reference the foregoing paragraphs 1 through 30 as though

6    fully set forth herein.

7           32.    A valid contract (the License Agreement) existed between BAI and Cho.

8           33.    Myeong was aware of the Licensing Agreement.

9           34.    Myeong's actions were designed to induce Cho to breach her obligations to BAI

10   under the Licensing Agreement.

11          35.    As a direct result of Myeong's actions, Cho breached the Licensing Agreement by

12   (1) publishing and selling the ABLLS-R Material without BAI's consent and in violation of the

13   Agreement, and (2) failing to pay BAI the royalties owed under that Agreement.

14          36.    As a direct result of Myeong's actions BAI has been harmed and suffered

15   damages to date in an amount to be proven at trial.

16          37.    Myeong in undertaking the actions set forth above was guilty of fraud, oppression

17   and malice.

18          38.    As a result, BAI seeks both compensatory and punitive damages in an amount to

19   be proven at trial.

20          WHEREFORE, BAI prays for judgment as hereinafter set forth.

21                             **FOURTH CAUSE OF ACTION**

22                **(COPYRIGHT INFRINGEMENT, ALL DEFENDANTS)**

23          39.    BAI repeats and hereby incorporates herein by reference, as though specifically

24   pleaded herein, the allegations contained in paragraph 1 through 38 above.

25          40.    BAI owns a valid copyright for the ABLLS Materials and ABLLS-R Materials.

26          41.    Defendants copied original elements of the ABLLS Materials and ABLLS-R

27   Materials and used this material to create a derivative work – the Korean Translation.

28          42.    Defendants distributed and sold the Korean Translation in a manner not

6

1 | authorized by BAI.

2 | 43. Defendants have unjustly profited as a result of the distribution and sales of the
3 | Korean Translation.

4 | 44. BAI has submitted, and the United States Copyright Office has issued a copyright
5 | registration for the ABLLS Material and ABLLS-R Materials, true and correct copies of which
6 | are attached hereto as Exhibits A-B.

7 | **FIFTH CAUSE OF ACTION**
8 | **(TRADEMARK INFRINGEMENT, ALL DEFENDANTS)**

9 | 45. BAI repeats and hereby incorporates herein by reference, as though specifically
10 | pleaded herein, the allegations contained in paragraph 1 through 44 above.

11 | 46. Defendant's use of BAI's trademark "ABLLS-R" comprises willful infringement
12 | of BAI's registered trademark and is likely to cause confusion, mistake, and deception of the
13 | public as to the identity and origin of BAI's goods, causing irreparable harm to BAI for which
14 | there is no remedy at law.

15 | 47. BAI's trademark is widely recognized by the general consumer throughout the
16 | United States and throughout the world as a designation of source of goods with BAI's
17 | trademark. Defendant's use of "ABLLS-R" comprises an infringement of BAI's registered
18 | trademark and is likely to cause dilution of BAI's trademark, causing irreparable harm to BAI for
19 | which there is no remedy at law.

20 | 48. By reason of the foregoing facts, Defendant is liable to BAI for trademark
21 | infringement under 15 U.S.C. § 1114 et seq. and California Business & Professions Code §
22 | 14245, 14247.

23 | **SIXTH CAUSE OF ACTION**
24 | **(UNFAIR COMPETITION, ALL DEFENDANTS)**

25 | 49. Plaintiff repeats and hereby incorporates herein by reference, as though
26 | specifically pleaded herein, the allegations contained in paragraphs 1 through 48 above.

27 | 50. Defendants' took the following improper actions in direct competition with
28 | Plaintiff in a manner which was misleading and deceptive to the public and which constitutes

7

COMPLAINT FOR BREACH OF CONTRACT, ETC.

unfair competition within the meaning of California Business and Professions Code Section 17200:

        A.    Using the content of the ABLLS-R Materials and the ABLLS-R Trademark to promote, market and distribute their services giving the misleading impression that such use was approved by BAI when in fact it was not;

        B.    Using the content of the ABLLS-R Trademark to promote, market and distribute its services giving the misleading impression that such use and material that was being provided by Defendants was approved and endorsed by BAI when in fact it was not;

        C.    Defendants' actions as set forth above were in manner that members of the public are likely to be deceived.

        D.    Pursuant to California Business and Professions Code Section 17203, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition, as well as disgorgement of all of Defendants' profits associated with this unfair competition.

    WHEREFORE, BAI prays for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

## (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, ALL DEFENDANTS)

51.    BAI repeats and hereby incorporates herein by reference, as though specifically pleaded herein, the allegations contained in paragraph 1 through 50 above.

52.    Plaintiff has a prospective economic relationship with individuals who wish to purchase the ABLLS-R Materials and a Korean translation of those materials.

53.    Defendants knew of those prospective relationships, and knew that it did not have Plaintiff's permission to make the content of the ABLLS-R Materials, including the Korean Translation, available to those without BAI's approval.

54.    Defendants' conduct of selling and making the Korean Translation available disrupted Plaintiff's relationship with its potential customers.

55.    As a result of Defendants' conduct, BAI has suffered harm in the form of lost

8

1  revenue and profits that it would have otherwise received.

2  WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

3  **PRAYER**

4  WHEREFORE, BAI demands judgment against Defendants for:

5  1.  An order requiring Defendants to show cause, if they have any, why they should

6  not be enjoined as set forth below, during the pendency of this action from (1) publishing, selling

7  and/or distributing any of the ABLLS Materials, ABLLS-R Materials and/or any derivative work

8  thereof, including but not limited to the Korean Translation and/or (2) using the ABLLS-R

9  Trademark.

10  2.  For a temporary restraining order, a preliminary injunction, and a permanent

11  injunction, enjoining defendants, and their agents, servants, employees, and all persons acting

12  under, in concert with, or for them, from:

13  a.  Using the "ABLLS-R" trademark;

14  b.  publishing, selling and/or distributing any of the ABLLS Materials, ABLLS-R

15  Materials and/or any derivative work thereof, including but not limited to the

16  Korean Translation;

17  c.  Otherwise infringing BAI's trademark and copyrights;

18  d.  Causing likelihood of confusion, deception, or mistake as to the source,

19  nature, or quality of Defendants' goods and services.

20  3.  For an order directing defendants to file with this Court and serve on BAI within

21  thirty (30) days after service of an injunction, a report in writing under oath, setting forth in

22  detail the manner and form in which defendants have complied with the injunction;

23  4.  For an order requiring defendant to deliver up and destroy all infringing goods;

24  5.  For an order requiring defendant to file with the Court and provide BAI an

25  accounting of all sales and profits realized by defendant's use of BAI's trademarks and

26  copyrights (including but not limited to their sales of the Korean Translation through the time of

27  first use/sales through time period of entry of final judgment and entry of permanent injunction.

28  6.  Exemplary and/or punitive damages;

9

COMPLAINT FOR BREACH OF CONTRACT, ETC.

1       **7.**      Attorney's fees in an amount determined by the court to be reasonable as

2 authorized by agreement and according to proof;

3       **8.**      Costs of suit; and

4       **9.**      Any other and further relief the court considers proper.

5

6    DATED:    August 2, 2017                 BROWN, GEE & WENGER LLP

7

8

9                                              KATHERINE F. WENGER

                                             Attorneys for Behavior Analysts, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF CONTRACT, ETC.

**EXHIBIT A**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-581-114

**Effective date of
registration:**

August 7, 2012

---

## Title

Title of Work: The Assessment of Basic Language and Learning Skills - Revised, Scoring Instructions
and IEP Development Guide, Version 3.2

## Completion/Publication

Year of Completion: 2010

Date of 1st Publication: September 30, 2010    Nation of 1st Publication: United States

## Author

Author: Behavior Analysts, Inc.

Author Created: text, editing

Work made for hire: Yes

Citizen of: United States    Domiciled in: United States

## Copyright claimant

Copyright Claimant: Behavior Analysts, Inc.

P.O. Box 23695, Pleasant Hill, CA, 94523-0695, United States

## Limitation of copyright claim

Material excluded from this claim: text

Previous registration and year: TX0005793139   2003
/ 2003-07-01

New material included in claim: text, editing

## Rights and Permissions

Organization Name: Brown Church & Gee LLP

Name: Katherine Wenger

Email: kwenger@boglegal.com

Address: 100 Pringle Ave.
Suite 310
Walnut Creek, CA 94596 United States

Telephone: 925-291-4455

## Certification

Registration #:  TX0007581114
Service Request #:  1-805742871



Brown Church & Gee LLP
Katherine Wenger
100 Pringle Ave.
Suite 310
Walnut Creek, CA 94596  United States

**EXHIBIT B**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**TX 7-581-146**

Effective date of
registration:

August 7, 2012

---

## Title

Title of Work: The Assessment of Basic Language and Learning Skills, ABLLS-R Protocol

## Completion/Publication

Year of Completion: 2010

Date of 1st Publication: September 30, 2010     Nation of 1st Publication: United States

## Author

■ Author: Behavior Analysts, Inc.

Author Created: text, editing

Work made for hire: Yes

Citizen of: United States          Domiciled in: United States

## Copyright claimant

Copyright Claimant: Behavior Analysts, Inc.

P.O. Box 23695, Pleasant Hill, CA, CA, 94523-0695, United States

## Limitation of copyright claim

Material excluded from this claim: text

Previous registration and year: TX0005773120   2003
/ 2003-07-01
TX0004029936   1995
/ 1995-04-17

New material included in claim: text, editing

## Rights and Permissions

Organization Name: Brown Church & Gee LLP

Name: Katherine  Wenger

Email: kwenger@bcglegal.com

Address: 100 Pringle

Suite 310

Walnut Creek, CA 94596  United States

Telephone:   925-291-4455

Page 1 of 2

Registration #: TX0007581146
Service Request #: 1-805742671



Brown Church & Gee LLP
Katherine Wenger
100 Pringle Avenue
Suite 310
Walnut Creek, CA 94596  United States

EXHIBIT C

# United States of America

## United States Patent and Trademark Office

# ABLLS-R

**Reg. No. 4,364,047**
**Registered July 9, 2013**
**Int. Cl.: 16**

**TRADEMARK**

**PRINCIPAL REGISTER**

BEHAVIOR ANALYSTS, INC. (CALIFORNIA CORPORATION)
SUITE A
311 LENNON LANE
WALNUT CREEK, CA 94598

FOR: PRINTED INSTRUCTIONAL, EDUCATIONAL, AND TEACHING MATERIALS IN THE
FIELD OF EDUCATING CHILDREN WITH LEARNING AND DEVELOPMENTAL DISABIL-
ITIES , IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 9-30-2010; IN COMMERCE 9-30-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-766,232, FILED 10-29-2012.

TRACY WHITTAKER-BROWN, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

**EXHIBIT D**



## COPYRIGHT AND TRADEMARK LICENSE AGREEMENT

This Copyright and Trademark License Agreement ("Agreement") is by and between Dr. Grace Cho, whose principal place of business is located at 5425 N Morgan St. #206 Alexandria, VA 22312 ("Licensee"), and Behavior Analysts, Inc., a California corporation whose principal place of business is located at 311 Lennon Lane, Suite A, Walnut Creek, California  94598 ("Licensor").  The Agreement is effective as of the later of the dates that it is executed by both parties ("Effective Date").

WHEREAS Licensor is the creator of the book entitled *The Assessment of  Basic Language and Learning Skills - Revised*, published in 2010 ("the Work") [All rights granted in this Agreement apply only to the edition of the Work published in 2010 and do not apply to any previous or subsequent editions or revisions of the Work issued by Licensor.];

WHEREAS Licensor is the owner of all right, title and interest, including, without limitation, copyright in the Work;

WHEREAS Licensor is the owner of the registered trademark ABLLS®-R ("the Mark"), version 3.2,  for use in conjunction with the manufacture and publication of the Work;

WHEREAS Licensee desires to create, reproduce and distribute Derivative Work as defined below; and

WHEREAS Licensor desires to permit Licensee to create such Derivative Work;

NOW, THEREFORE, in consideration of the foregoing recitals, incorporated herein by reference, the mutual covenants and agreements set forth herein and other good and valuable consideration, the sufficiency of which is hereby acknowledged by each of the parties hereto, the parties agree as follows:

1.    Definitions

     a.    "Derivative Work" shall mean the text and content of the work translated into Korean and shall include both the ABLLS®-R, version 3.2, Protocol and the ABLLS®-R, version 3.2, Scoring Instructions and IEP Development Guide, as well as the covers for both publications.  The "shell" will be sent electronically to Licensee, and a print copy of the appropriate manuals, protocol and guide will be mailed to Licensee when both parties have signed the agreement.

     b.    The Term of this Agreement is for a period of five (5) years ("the Term"), at the end of which time all rights granted herein are renewable by mutual agreement.  If the Derivative Work is not completed within twelve (12) months of the Effective Date, all rights granted herein shall automatically revert to Licensor.

c.      Territory shall mean the entire world.

2.      Grant of copyright license.  Subject to the terms and conditions set forth in the Agreement, Licensor hereby grants to Licensee for the full Term of this Agreement and throughout the Territory a nonexclusive, nontransferable, non-sub licensable, royalty-bearing license (the "Copyright License").

a.      Creation of Derivative Work.  Pursuant to this Agreement, the Licensee has an exclusive right to create, reproduce and distribute the Derivative Work in Korea and elsewhere in editions suitable to meet the reasonable demand therefor.  Licensee shall be solely responsible for all costs that it incurs in the creation, reproduction and distribution of the Derivative Work.

b.      Promotion of Derivative Work.  Licensee has an exclusive right to advertise and promote the Derivative Work throughout the Territory; and

c.      Printed Derivative Work Only.  This License applies solely to the printed version of the Derivative Work, and does not include subsidiary rights for publication in electronic, optical, digital or other forms now existing or yet to be devised.

3.      Payment.

a.      Royalties.  Pursuant to the Copyright License, Licensee shall pay Licensor royalties ("Royalties") in an amount equal to twenty percent (20%) of the gross revenue (less deductions for customer-paid packing and shipping fees and customer-paid sales or use taxes) received by Licensee on any copy of the Derivative Work sold by Licensee and twenty percent (20%) of gross revenue (less deductions for customer-paid packing and shipping fees and customer-paid sales or use taxes) received by Licensee on account of any copy of the Derivative Work sold wholesale by Licensee.  The Royalties payments will be calculated in U.S. currency. Licensee shall pay such Royalties to Licensor semiannually on or before February 1 for the preceding July 1 through December 31 period and on or before August 1 for the preceding January 1 through June 30 period.

b.      Audits.  Licensor may request one (1) financial audit each two calendar years of Licensee's records relating to sales of the Derivative Work.  Such requests shall be in writing. Each such audit shall be performed by an independent Canadian certified public accountant agreed upon by both parties.  Such auditor's determination shall be final.  If an error in accounting is discovered as a result of such audit, the party in whose favor the error was made shall promptly pay the other the amount in error.  Such audit shall be at Licensor expense; unless errors of accounting in Licensee's favor amounting to ten percent (10%) or more of the total sum paid by Licensee to Licensor for the period being audited are found, in which event the cost of the audit shall be borne by Licensee.

4.    Amendments to Work.  Licensee agrees that the Derivative Work shall be faithfully and accurately created as best possible.  The translators must be aware of the customs so that the examples can be altered to match the societal practices and traditions of the culture while being sensitive to subgroups within the culture.  Additionally, it is understood that adjustments and changes will be necessary to reflect the new language's differences related to vocabulary, concepts, grammar, syntax, etc.  All such changes are expected to be made without significantly altering the original intended meaning of the original Work created by the author.  No material shall be added or deleted without the prior written consent of the Licensor.

5.    Credit to Licensor.

         a.    On Derivative Work.  Licensee shall include in its translated edition, printed in the English language, the name of the author and Licensor and the title of the Work and give full credit on the title page to Licensor as author of the original volume in the English language, and in addition Licensee shall reproduce the copyright notice in exactly the same form (including the date of original publication) as in Licensor's edition of the Work.  Licensee shall also include the text stating that Licensor is not responsible for the quality of the translation.  Licensee may be identified as the translator of the translated edition but may not claim co-authorship in any form.

         b.    In the Press.  To the extent to which it is within their power to do so, Licensee shall also ensure that Licensor is credited as the creator of the Work whenever the Derivative Work is mentioned in the press.

6.    Protection of Copyright.  Licensee shall take all steps necessary on their part to secure their own rights and those of the author in the Work (including rights to reprint any essential material in the Work or the Derivative Work that has been quoted from other copyrighted sources).  Licensee shall not perform any act or, to the extent that such is within Licensee's control, permit any act to be performed which may cause the Korean edition of the Derivative Work to vest in the public domain in any country in which the original shall be circulated, and if in any such country any notice shall be necessary to protect the copyright of the translation, Licensee shall cause such notice to be affixed in each copy there circulated.

7.    Grant of Trademark License.  Subject to the terms and conditions set forth in the Agreement, Licensor hereby grants to Licensee for the full term of this Agreement and throughout the Territory a nonexclusive, nontransferable, non-sub licensable, royalty-free license (the "Trademark License") to use  ABLLS®-R ("the Mark"), version 3.2, in conjunction with the creation of the Derivative Work.

8.    Promotion of Translated Version of Work.  Preferably within 6 months, but no later than 12 months, of the publication launch date the Licensee shall work with the Licensor to coordinate a training workshop to teach consumers to administer and use the ABLLS®-R . Licensee shall be responsible for coordinating presentation dates with Behavior Analysts, Inc., and securing a

venue. Licensee shall assist with the development of marketing materials, advertising, registration management, language interpreter(s), and the development of any workshop materials.

9.      Copies Provided to Licensor:  Upon completion Licensee will provide Licensor without charge an electronic version of the Derivative Work, which shall include both manuals (the Guide and the Protocol) as well as the covers for each and ten (10) written copies of the Derivative Work. With regard to Licensor's purchase of any further copies of the Derivative Work, Licensee agrees to offer Licensor a discount in the amount of fifty percent (50%) off the established list price on bulk purchases of the Derivative Work.  Licensor shall pay shipping charges for any such purchase."

10.     Reversion of Rights.  If Licensee at any time by themselves or anyone acting on their behalf fails to fulfill or comply with any of the conditions accepted by them in this Agreement and should then not rectify the violation within one (1) month after written notification by Licensor, or should Licensee go into liquidation, all rights granted herein shall automatically revert to Licensor.

11.     Cancellation of Agreement.  This Agreement may be terminated by either party for any major concern of either party upon 90 days' written notice to the other party.  Major concerns could include but are not limited to a failure to complete the translation, creation of a derivative product that is not consistent with the quality of the original Work, failure to pay Royalties, or other violations of this Agreement.

12.     Authority to Enter Into Agreement.  Licensor warrants to Licensee that they have full power to make this Agreement and that the Work is in no way an infringement of any existing copyright.

13.     California Law.  The laws of the State of California and of the United States of America shall apply to this Agreement, which shall be construed and interpreted in accordance with such laws.  All disputes arising under or in connection with this Agreement shall be determined in a state or federal court in California or under the rules of the American Arbitration Association. Each of the parties agrees and acknowledges that personal jurisdiction and venue shall be proper in such courts and expressly consents to exclusive jurisdiction and venue.

14.     No Assignment.  Licensee may not assign all or any rights granted under this Agreement or any interest therein without the prior written consent of Licensor.

15.     Waiver.  No action or course of conduct shall constitute a waiver of any terms and conditions of this Agreement, unless such waiver is in writing, and then only to the extent specified.  Such a waiver on one occasion shall not constitute a waiver on any other occasion or a waiver of any other terms and conditions of this Agreement.

16.   <u>Indemnification.</u>   Licensee shall indemnify, defend and hold harmless Licensor and its officers, directors, agents and employees from and against all claims, losses, expenses, fees (including attorneys' and expert witnesses' fees), costs and judgments that may be asserted against Licensor and that result from the acts or omissions of Licensee.

     a.   Licensor will notify Licensee of any legal proceeding taken against Licensor with regard to this Agreement as soon as Licensor is made aware of it.

     b.   Licensor will not agree to any compromise relating to Licensee without Licensee's confirmation.

     c.   Licensor will not initiate any legal proceeding regarding Licensee nor negotiate any agreement regarding Licensee without Licensee's confirmation.

17.   <u>Entire Agreement.</u>   This Agreement constitutes the entire agreement of the parties hereto with respect to its subject matter and may be amended or modified only by a writing signed by duly authorized officers or agents of both parties.   This agreement supersedes all previous agreements between the parties with respect to its subject matter.   There are no oral or written collateral representations, agreements or understandings except as provided herein.

18.   <u>Notices.</u>   All notices, demands and other communications ("Notices") that may be or are required to be given hereunder shall be in writing and sent to the addresses appearing above.   Such Notice shall be deemed to have been given a) when personally delivered or b) the next business day following the date such Notice was sent by overnight delivery service.

19.   <u>Counterparts.</u>   This Agreement may be signed in counterparts, and shall be effective as if all parties had signed the same original.   A facsimile or electronic transmission of this Agreement shall be effective as an original.

20.   <u>Confidentiality.</u>   Neither party may disclose the terms and conditions of this Agreement to any third party without prior written permission.

**TRANSLATION COMPLETION DATE:** _10-30-2012_

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the Effective Date.

Behavior Analysts Inc., Licensor
311 Lennon Lane, Suite A
Walnut Creek, California 94598

By: _~signature~_

Name: _James W. Partington, PhD_

Title: _Director_

Date: _11/2/2011_


Dr. Grace Cho, Licensee
5425 N Morgan St. #206
Alexandria, VA 22312

By: _~signature~_

Name: _Grace Cho, Ph.D., BCBA-D_

Title: _Board Certified Behavior Analyst_

Date: _10 - 27 - 2011_

**EXHIBIT E**

## COPYRIGHT ASSIGNMENT AGREEMENT

This COPYRIGHT ASSIGNMENT AGREEMENT ("Assignment") is by and between Dr. Grace Cho, whose principal place of business is located at 5425 N. Morgan Street, #206, Alexandria, VA 22312 ("Assignor"), and Behavior Analysts, Inc., a California corporation, whose principal place of business is located at 311 Lennon Lane, Suite A, Walnut Creek, CA 94598 ("Assignee"). This Assignment is effective as of November 2, 2011.

### RECITALS

WHEREAS Assignee is the creator of the book entitled *The Assessment of Basic Language and Learning Skills – Revised*, published in 2010 (the "Work"). Assignee is the owner of all right, title and interest, including without limitation, copyright in the Work;

WHEREAS Assignee and Assignor have entered into that certain Copyright and Trademark License Agreement dated as of November 2, 2011 ("License Agreement"), wherein Assignor agreed to translate the Work into the Korean language ("Derivative Work"), and such translation has been performed pursuant to the terms of the License Agreement;

WHEREAS Assignee desires to confirm its rights with respect to the Derivative Work;

NOW, THEREFORE, in consideration of the foregoing recitals, incorporated herein by reference, the mutual covenants and agreements set forth herein and other good and valuable consideration, the sufficiency of which is hereby acknowledged by each of the parties hereto, the parties agree as follows:

1. **Assignment.** Assignor hereby transfers, conveys, and assigns to the Assignee, free and clear of any liens, licenses or encumbrances, the entire right, title, and interest in and to the Derivative Work throughout the world, including without limitation in and to any and all copyrights for the Derivative Work (including but not limited to rights to copy, publish, excerpt, collect royalties and make derivative works) in print, electronic, Internet, broadcast, and all other forms and media now or hereafter known, and for any and all causes of action heretofore accrued in Assignor's favor for infringement of the aforesaid copyrights, to have and to hold the same unto the Assignee, its successors and assigns, for and during the existence of the aforesaid copyrights, and all renewals and extensions thereof. At any time and from time to time hereafter, the Assignor shall upon the Assignee's written request take any and all steps and execute, acknowledge and deliver to the Assignee any and all further instruments and assurances necessary or expedient in order to vest the aforesaid copyrights and causes of action more effectively in the Assignee.

2.  <u>License Agreement Remains in Effect.</u> This Assignment shall not change the terms and conditions stated in the License Agreement. The License Agreement shall remain in full force and effect.

3.  <u>California Law.</u> The laws of the State of California and the United States of America shall apply to this Assignment, which shall be construed and interpreted in accordance with such laws. All disputes arising under or in connection with this Assignment shall be determined in state or federal court in California or under the rules of the American Arbitration Association. Each of the parties agrees and acknowledges that personal jurisdiction and venue shall be proper in such courts and expressly consents to exclusive jurisdiction.

4.  <u>Successors and Assigns.</u> This Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

5.  <u>Counterparts.</u> This Copyright Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date shown above:

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| Dr. Grace Cho | Behavior Analysts, Inc., a California Corporation |
| By: _Gmu Cho, Ph.D, BCBA-D_ | By: _[signature]_ |
| Name: _Grace Cho_ | Name: _James W Partington, PhD_ |
| Title: _Board Certified Behavior Analyst_ | Title: _President_ |
| Date: _8-29-2014_ | Date: _8/29/14_ |